UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY PAUL SMITH,<br><br>       Plaintiff,<br><br>  v.<br><br>GAVIN NEWSOME, et al.,<br><br>       Defendants. | Case No. 1:19-cv-00651-DAD-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS THIRD AMENDED COMPLAINT BE DISMISSED, WITH LEAVE TO AMEND, FOR FAILURE TO STATE A CLAIM AND FAILURE TO COMPLY WITH PLEADING STANDARDS<br><br>(ECF NO. 27)<br><br>TWENTY-ONE (21) DAY DEADLINE |

Gary Paul Smith ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action. Plaintiff filed the complaint commencing this action on May 14, 2019. (ECF No. 1). Plaintiff filed a First Amended Complaint on June 10, 2019. (ECF No. 6). The Court screened Plaintiff's First Amended Complaint, found that it failed to state any cognizable claims, provided relevant legal standards concerning deliberate indifference to a medical needs in violation of the Eighth Amendment, and gave Plaintiff leave to amend on November 7, 2019. (ECF No. 21). Plaintiff filed a Second Amended Complaint ("SAC") on November 27, 2019, (ECF No. 23), and filed a Third Amended Complaint ("TAC") on December 26, 2019 (ECF No. 27).

On April 10, 2020, the Court screened the TAC and analyzed the SAC, again found that both failed to state any cognizable claims, again provided relevant legal standards, and again

1

gave Plaintiff leave to amend—now for a fourth time. (ECF No. 35). On April 24, 2020, Plaintiff informed the Court he wished to stand on his Third Amended Complaint along with his First and Second. (ECF No. 36).[1]

Accordingly, for the reasons described in the Court's second screening order as explained below, the Court recommends that this case be dismissed for failure to state a claim and failure to follow pleading standards.

In the abundance of caution, the Court recommends providing Plaintiff with one further opportunity to amend his complaint, but limiting the amended complaint to no more than 20 pages, and again ordering that any amended complaint must contain a short and plain statement of the facts and claim(s), and must specifically state what each defendant did that violated Plaintiff's constitutional rights.  If Plaintiff fails to file an amended complaint, or if his amended complaint fails to follow these directions, Plaintiff's case should be subject to dismissal.

I.    PROCEDURAL BACKGROUND

On May 14, 2019, Plaintiff filed a complaint asserting claims under the First, Fifth, Sixth, Eighth, Tenth, Eleventh, Thirteenth, and Fourteenth Amendments to the U.S. Constitution, as well as twenty-one state constitutional rights.  (ECF No. 1.) Plaintiff sought $900,000,000 from various state and local government officials.

Plaintiff then filed a First Amended Complaint on June 10, 2019, asserting one claim concerning inadequate medical care. (ECF No. 6.)

On September 30, 2019, the Court ordered Plaintiff to show cause why the action should not be dismissed without prejudice for failing to exhaust his administrative appeals. (ECF No. 15.) Plaintiff filed two responses: one on October 3, 2019, (ECF No. 18), and one on

---

[1] Plaintiff also filed a petition for a writ of habeas corpus, placing this action's file number on the form. (ECF No. 37). Some of the claims there repeat those in his three complaints. The Court surmised that the petition sought a writ of habeas corpus and that Plaintiff erroneously placed this file number on the action, so the Court ordered the Clerk of Court to open a new file for it.

October 21, 2019, (ECF No. 19). These responses totaled 46 pages.

This Court screened the First Amended Complaint on November 7, 2019 and found no cognizable claims. (ECF No. 21.)  The Court provided relevant legal standards for Section 1983 as well as deliberate indifference to serious medical needs under the Eighth Amendment.

Then on November 27, 2019, Plaintiff lodged a 133-page Second Amended Complaint ("SAC"). (ECF No. 23.) The caption for the defendants reads: "Municipality Fresno County, & AL Because of number of defendants & enormity of issues, All will be referred to as defendants." He checked a box indicating there are more defendants. Pages 1-A through 4-A of the SAC contain mostly legal arguments, though a few other defendants are named.

On December 26, 2019, Plaintiff lodged the Third Amended Complaint, ("TAC"), which is 73 pages long. (ECF No. 27.) It lists well over 50 defendants. Plaintiff did not seek leave to amend the SAC before lodging the TAC.

The Court reviewed both the Second and Third Amended Complaints and found that neither stated a claim. (ECF No. 35). In its screening order, the Court retroactively granted Plaintiff leave to amend the TAC, accepted the TAC for filing, and vacated its Order to Show Cause, (ECF No. 15). (ECF No. 35 at 2.)  The Court explained the requirement under Rule 8 to provide a short and plan statement of the claim showing that the pleader is entitled to relief.  It also explained the prohibition under Rules 18 and 20 against asserting a myriad of unrelated claims against different defendants.[2] (ECF No. 35, at p. 9).

In its screening order, the Court directed Plaintiff to either: 1) file an amended complaint; or 2) notify the Court in writing that he wants to stand on his current complaint, subject to this Court issuing findings and recommendations to the assigned district judge

---

[2] The second screening order included nine pages of potentially applicable legal standards regarding section 1983; Federal Rules of Civil Procedure 8, 18, and 20; deprivation of life's necessities; legal mail; procedural and substantive due process in relation to withdrawal of money from a prison trust account; library access; the Fourteenth Amendment's protection of privacy; the Privacy Act of 1974; deliberate indifference to serious medical needs; Title II of the Americans with Disabilities Act; Section 504 of the Rehabilitation Act; and the need to separate petitions for writs of habeas corpus from Section 1983 proceedings.

consistent with the screening order.  (*Id.* at 7-8). The Court informed Plaintiff that amended complaints supersede original complaints, and they must be complete in themselves without reference to prior or superseding pleadings. (*Id*. at 7).

On April 24, 2020, Plaintiff informed the Court he wished to stand on his Third Amended Complaint along with his First and Second. (ECF No. 36). Plaintiff requested that the District Judge review all materials he sent, including the 167-page filing in response to the Court's second screening order. (*Id.* at 1).

## II.   SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).  As Plaintiff is proceeding *in forma pauperis* (ECF No. 4), the Court may also screen the complaint under 28 U.S.C. § 1915.  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).  The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679.  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  Additionally, a

plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

## III.    SUMMARY OF PLAINTIFF'S SECOND AND THIRD AMENDED COMPLAINTS

The following summarizes Plaintiff's allegations in the SAC and TAC which, together, total 206 pages.

### A.   Second Amended Complaint

Although the Third Amended Complaint is the current complaint subject to screening, the Court summarizes the allegations in the Second Amended Complaint as well.

Plaintiff's SAC alleges as follows:

Plaintiff is told everything he needs for his lawsuit is on the computer, and the library does not have the books he sorely needs. When he tries to explain that he does not know how to use a computer, he is told someone will show him. He has been at California Correctional Institution ("CCI") for thirteen months and still does not know how to use a computer. If he could pay them, the legal inmates would show him.

Plaintiff owns nothing and cannot afford basic necessities or amenities. Plaintiff had a couple of jobs that paid well. "But because of restitution, Plaintiff never was told of in court, jail by either judges, ADA or my PD," Plaintiff accepted a plea bargain that he thought was good at the time because first three deals he was offered all contained a life sentence. The DAs kept telling Plaintiff that this was his third strike, but in actuality it was his second strike. He has over 8,000 pages. Plaintiff has been in prison 9½ years longer than he should. Plaintiff was sentenced twice for the same crime. Plaintiff also complains of a five-year enhancement for weapon Plaintiff never had. State and county doctors, nurses, and pharmacists had him on wrong and too much medication for 16½ years.

Plaintiff has had his legal mail opened and taped closed five times in eleven months. Plaintiff has sent two to the Court. "[T]hese people know exactly what [he is] doing" by reading his legal mail.

On October 13, 2006, Plaintiff slipped in water at work. He broke his femur, cracked his left hip, and had emergency surgery. Plaintiff alleges the surgeon, Dr. Levy, put a nail in wrong and broke a screw during surgery. For years, no medical person would believe Plaintiff when he told them of his severe pain. Plaintiff kept telling Dr. Krpan how much back, shoulder, neck, thigh pain he had.

For six years, all Dr. Krpan said was that there is nothing wrong with Plaintiff. Plaintiff was transferred back to CTF South in June 2016. In July, Dr. Javate x-rayed Plaintiff's left hip, thigh and lower back. Two weeks later, Plaintiff was [illegible] to see Dr. Javate. The doctor told Plaintiff "I don't see how any doctor working at CDCR can see these x-rays and say your [sic] not mobility impaired." Plaintiff was given a vest and cane that morning. When Plaintiff asked for better pain medication, Dr. Javate told Plaintiff no because "it says you checked T-3."

Plaintiff tried explaining that it was a lie. Because of those lies, Plaintiff only got Tylenol and 800 mg ibuprofen. Dr. Ross had Plaintiff's vest and cane taken from Plaintiff because the young doctor thought Plaintiff called her a b****. Dr. Ross had this done to Plaintiff without examining him or even talking to him.

When Plaintiff arrived at SCC on March 20, 2010, Plaintiff already had several chronos from five other CDCR institutions and their doctors stating lower, lower, no stairs, no working around sharp objects, wet or slippery surfaces, no working above ground, no ladders. Yet CCI Morgan and CCII Silva assigned Plaintiff to school because he had no GED or diploma. The school and the library were up two flights of stairs. Plaintiff asked many times to be taken out of school also to be transferred to prison where Plaintiff did not have to climb two flights of stairs to go to school or the library. Plaintiff was told if he did not go to school, he would be put on C-status.

6

On March 10, 2014, while leaving library, Plaintiff had a petit mal seizure two or three steps after reaching the second landing. It was not first one Plaintiff had. For five years, Plaintiff was made to climb up and down stairs. Plaintiff asked head librarian Garcia twice asking if Plaintiff can send another inmate to get books. Plaintiff was told no. Everyday Plaintiff walked up and down those stairs.

The exact same thing happened at RJD 10 years earlier. And the exact same when Plaintiff returned to MCSP when c/o pushing him in wheelchair. C/O Brockway screaming for Plaintiff to get out of the wheelchair and she just kept screaming, he was just returned from hospital after serious suicide attempt. Plaintiff tried to stand whereupon Plaintiff fell immediately on face, hitting bottom of steel cage imbedded in floor, busted head open and broke nose. This happened in prison hospital ward, which was not properly staffed.

The entire time Plaintiff was in Fresno County Jail, Plaintiff never saw a psychiatrist. Yet psych meds were prescribed and court paper stated untruly that he was seen by psych and probation.

Plaintiff attached a copy of his sentencing hearing transcript where the court reserved the issue of restitution.  Plaintiff alleges restitution was not in any bargain he accepted.

## B. <u>Third Amended Complaint</u>

Plaintiff makes the following allegations in the TAC:

Because of a sentencing judge and an illegally changed plea agreement Plaintiff made with another court, Plaintiff has been unable to purchase any of life's basic necessities and no amenities. Plaintiff has suffered physically, mentally and emotionally and embarrassment.

Plaintiff has had his legal mail opened on at least five separate occasions. Plaintiff already sent the court two pieces of legal mail that CCI had opened from bottom to make it look as if accidental. A lieutenant stated, "Not all legal mail is legal mail at this institution."

The law library does not have law books that Plaintiff needs. He is told they are on the computer. But he has never used a computer. A clerk gave Plaintiff five minutes of computer

lessons. At the end of five minutes, Plaintiff was told that was all the time the clerk could give him. At CTF CCI, there are eight computers for the hundreds of inmates on each yard. At CTF South and Jamestown, there are four computers, but those prisons all had the required books, as did HDSP. The clerks would only give him assistance if he could pay them, but he cannot pay them. The library is open on Tuesday and Wednesday for two hours, Friday and Saturday for four hours.

The medical staff prescribe Tylenol all the time. CDCR nurses do exams, prescribe, stitch, and do all that a doctor is supposed to do.

Anytime Plaintiff had to see Dr. Kongara, there was a C/O inside the little office with them. At times the C/O took part in the exam. Talking with the doctor, in violation of doctor/patient confidentiality and the Privacy Act. Dr. Kongara refused Plaintiff everything. Nurse Taylor had the doctor refuse Plaintiff everything. Plaintiff has been on entirely the wrong medication and so overly medicated for 16 ½ years.

Plaintiff alleges the CDCR wastes taxpayers' funds.

Dr. Levy, an orthopedic surgeon, inserted a nail incorrectly in Plaintiff's left hip during emergency surgery on October 13, 2006. Dr. Levy also put in a screw that broke during surgery and chose to leave it in. For the first eight weeks after the surgery, Plaintiff was on crutches. As soon as Plaintiff got returned to Donovan Correctional Facility, Plaintiff immediately complained of extreme pain for four years. He has experienced extreme unyielding pain for over thirteen years because of the aforementioned surgery.

After crutches, Plaintiff was given a cane and transferred to Old Folsom (Folsom State Prison). At Folsom, Plaintiff had multiple Chronos for lower tier, lower bunk. Plaintiff was then moved to the fourth tier and was still using a cane. Plaintiff had to go up two flights of stairs and then to get to the fourth tier. Plaintiff has fallen down two sets of stairs at two different institutions. He has been housed at the top tier at five of them.

Plaintiff alleges when his plea deal was offered by the court and plaintiff accepted, there was no restitution involved. Plaintiff sought records from Fresno Superior Court Archives six times, the last two with orders to produce. Plaintiff also wrote Justice Department, Governor, and four or five other agencies. Plaintiff seeks the court to order Fresno County Board of Supervisors to get copies of court appearance December 23, 2002. Under California law, money cannot be deducted from a trust account with a balance under $300. At no time has his trust account been anywhere near $300. Plaintiff seeks the return of all monies taken in illegal court order.

Plaintiff also alleges: "Having this prisoner defecate and urinate on self is an extremely clear violation of this prisoner's" rights.

## IV.   EVALUATION OF PLAINTIFF'S CLAIMS

### A.  Legal Standards for Pleading Requirements

Rule 8(a) of the Federal Rules of Civil Procedure requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint is not required to include detailed factual allegations, it must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678. The complaint must specifically state what each defendant did that violated the plaintiff's constitutional rights.

The TAC fails to describe what each defendant did or failed to do that violated Plaintiff's constitutional rights.  Plaintiff names numerous individuals as defendants, but then fails to describe what any of them did or failed to do to cause him harm.  For example, although Plaintiff alleges his legal mail was opened, he does not name any defendant who is responsible for opening it.

Additionally, the TAC does not comply with Rule 8 because it does not contain a short and plain statement of his claims showing that he is entitled to relief. *See* Fed. R. Civ. P. 8(a). Plaintiff describes many events, some of which are unrelated, and does not describe clearly

what action or inaction he believes violated his constitutional rights.  The document is 73 pages long and is difficult to understand. Plaintiff lists most of the defendants on pages 9-11, interspersed with arguments. It contains exhibits, some of which appear related to his claims, but others are either incomprehensible or are highlighted portions of legal textbooks or articles. After the exhibits, it contains five more handwritten pages which appear to be legal arguments that concern, among other things, the relationship between the Civil War and state court judge immunity from federal civil rights suits.

## B.  Rules 18 and 20 Related Claims Requirement

A complaint must also comply with the requirements of Federal Rules of Civil Procedure 18 and 20. Under these rules, a plaintiff may not proceed on a myriad of unrelated claims against different defendants in a single action. Fed. R. Civ. P. 18(a), 20(a)(2).

> The controlling principle appears in Fed. R. Civ. P. 18(a): 'A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.' Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)."

*K'napp v. California Dept. of Corrections,* 2013 WL 5817765, at *2 (E.D. Cal., Oct. 29, 2013), *aff'd sub nom. K'napp v. California Dept. of Corrections & Rehabilitation*, 599 Fed. Appx. 791 (9th Cir. 2015) (alteration in original) (quoting *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). *See also* Fed. R. Civ. P. 20(a)(2) ("Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.").

Plaintiff's TAC does not comply with Federal Rules of Civil Procedure 18 and 20 because it includes unrelated claims against different defendants. Plaintiff describes events that occurred at different times, at different institutions, involving different defendants. Additionally, it appears that at least some of the incidents occurred years apart. For instance, Plaintiff complains his 2006 surgery violated his Eighth Amendment rights. He also complains that the library's lack of books hinders his access to courts. These are not related.

Moreover, the list of defendants is particularly long. Pages 1 and 9-11 of his TAC intersperses his list of defendants with legal arguments. The defendants include his public defender, various medical providers, and Governor Gavin Newsom. The claims against these defendants—which appear to relate to his sentencing, his medical treatment, and his disabilities—are unrelated.

## V.    DISMISSAL FOR FAILURE TO FOLLOW RULES 8, 18 AND 20 IS PROPER

As explained in *Hearns v. San Bernadino Police Department*, the Ninth Circuit affirms dismissals for failure to follow pleading rules:

> We affirmed a district court's dismissal on Rule 8 grounds in *McHenry v. Renne,* 84 F.3d 1172 (9th Cir.1996). Not only was the first complaint at issue in that case lengthy; it set out its claims in two sentences, which comprised 30 lines, without specifying which of the 20 named defendants were liable for which claims. *Id.* at 1174. To make matters worse, in response to the district court's order to file an amended complaint " 'which clearly and concisely explains which allegations are relevant to which defendants,' " the plaintiffs filed an amended complaint that was longer than the first complaint. *Id.* (quoting district court's order). The district court then gave the plaintiffs a final opportunity to file a proper complaint " 'which states clearly how each and every defendant is alleged to have violated plaintiffs' legal rights.... [P]laintiffs would be well advised to edit or eliminate their twenty-six page introduction and focus on linking their factual allegations to actual legal claims.' " *Id.* at 1176 (quoting district court's order). We affirmed the district court's dismissal of the final amended complaint, which we described as "argumentative, prolix, replete with redundancy, and largely irrelevant," *id.* at 1177, noting that "[o]nly by months or years of discovery and motions [could] each defendant find out what he is being sued for," *id.* at 1178. Considering Rule 41(b), we concluded that the district court had not abused its discretion because it had already given the plaintiffs multiple opportunities to comply, along with specific instructions on how to correct the complaint. *Id.* at 1178–79.

In *Nevijel* [*v. N. Coast Life Ins. Co.*]*,* 651 F.2d 671 [(9th Cir. 1981)]*,* we upheld a Rule 8(a) dismissal of a 48–page complaint that contained an additional 23 pages of addenda and exhibits. The complaint was characterized as " 'verbose, confusing and almost entirely conclusory.' " *Id.* at 674. After the district court dismissed the original complaint without prejudice, the plaintiff filed a late amended complaint that "named additional defendants without leave of court, and was equally as verbose, confusing and conclusory as the initial complaint." *Id.* We found no abuse of discretion because the district court provided "reasonable opportunities and alternatives" before dismissing with prejudice; in light of the fact that the plaintiff offered no excuse for the late filing and utterly failed to comply with the district court's order, there was no reason to think that an additional opportunity would yield different results. *See id.*

In *Schmidt* [*v. Herrmann*, 614 F.2d 1221 (9th Cir. 1980)]*,* the complaint was 30 pages long. It was "impossible to designate the cause or causes of action attempted to be alleged in the complaint." 614 F.2d at 1223. The complaint was described as a "confusing statement of a non-existing cause of action" and as "confusing, distracting, ambiguous, and unintelligible." *Id.* at 1224. Additionally, the complaint's conclusory allegations did not satisfy the heightened pleading requirement for averments of fraud. *Id.* The Ninth Circuit upheld the dismissal of the action following two amendments of the original complaint. *Id.* at 1223–24.

In *Gillibeau v. City of Richmond,* 417 F.2d 426, 431–32 (9th Cir.1969), one of the claims named seven defendants. As to only one of these defendants, that claim was dismissed for failing to comply with Rule 8(a)(2). This court reversed the dismissal based on Rule 8(a)(2). In doing so, this court stated that "a dismissal for a violation under Rule 8(a)(2), is usually confined to instances in which the complaint is so 'verbose, confused and redundant that its true substance, if any, is well disguised.' " *Id.* at 431 (quoting *Corcoran v. Yorty,* 347 F.2d 222, 223 (9th Cir.1965)). The claim at issue did not satisfy those criteria.

530 F.3d 1124, 1130–31 (9th Cir. 2008).

Here, Plaintiff's Second Amended Complaint and Third Amended Complaint are 133- and 73- pages long, respectively. (ECF Nos. 23, 27). After being warned twice that his most recent complaint is operative, Plaintiff's notice to the Court electing to stand on his complaint requests that the district judge review all his complaints, including his notice, which was 167 pages long and contains a multitude of exhibits. (ECF No. 36).

As in *McHenry*, Plaintiff's complaint "is argumentative, prolix, replete with

12

redundancy, and largely irrelevant." *Id.* at 1177. And, as there, "[d]espite all the pages, requiring a great deal of time for perusal, one cannot determine from the complaint who is being sued, for what relief, and on what theory, with enough detail to guide discovery." *Id.* at 1178. The concerns the Ninth Circuit stated there are applicable here, too:

> Prolix, confusing complaints such as the ones plaintiffs filed in this case impose unfair burdens on litigants and judges. As a practical matter, the judge and opposing counsel, in order to perform their responsibilities, cannot use a complaint such as the one plaintiffs filed, and must prepare outlines to determine who is being sued for what. Defendants are then put at risk that their outline differs from the judge's, that plaintiffs will surprise them with something new at trial which they reasonably did not understand to be in the case at all, and that res judicata effects of settlement or judgment will be different from what they reasonably expected. The rights of the defendants to be free from costly and harassing litigation must be considered.
>
> The judge wastes half a day in chambers preparing the "short and plain statement" which Rule 8 obligated plaintiffs to submit. He then must manage the litigation without knowing what claims are made against whom. This leads to discovery disputes and lengthy trials, prejudicing litigants in other case who follow the rules, as well as defendants in the case in which the prolix pleading is filed. The rights of litigants awaiting their turns to have other matters resolved must be considered.

*Id.* at 1179-80 (internal quotations and citations omitted).

In summary, Plaintiff's Third Amended Complaint is "so 'verbose, confused and redundant that its true substance, if any, is well disguised.'" *Hearns*, 530 F.3d at 1131 (quoting *Gillibeau*, 417 F.2d at 431).[3] Therefore, dismissal is proper.

## VI.   CONCLUSION AND RECOMMENDATIONS

For the reasons described above, and in light of the multiple amended complaints, the Court recommends dismissal for failure to state a claim and failure to follow Rules 8, 18 and 20.

The Court has carefully considered whether to recommend additional leave to amend. The Court gave Plaintiff leave to amend in its past two screening orders, and Plaintiff has

---

[3] The same is also true of his Second Amended Complaint and his notice of his intent to stand on his complaints. (ECF Nos. 23, 36).

already filed four complaints.  Plaintiff declined to amend his complaint in response to the last screening order.  However, the Court is mindful that dismissal with prejudice is appropriate when the plaintiff had been advised of the pleading requirements and given multiple chances to amend his complaint.

In the abundance of caution, therefore, the Court recommends giving Plaintiff one more opportunity to amend his complaint.  However, the Court recommends requiring that any amended complaint be limited to 20 pages including exhibits, if any.  It must contain a short and plain statement of the facts and claim(s).  It must specifically state what each defendant did that violated Plaintiff's constitutional rights.

If Plaintiff does not amend his complaint, or if Plaintiff's amended complaint violates these standards, the Court will recommend that Plaintiff's case be dismissed with prejudice.

Accordingly, the Court HEREBY RECOMMENDS that:

1.  Plaintiff's Third Amended Complaint be Dismissed for Failure to State a Claim and Failure to Comply with Federal Rules of Civil Procedure 8, 18, and 20;

2.  Plaintiff be given thirty days to file a Fourth Amended Complaint if he chooses.  The Fourth Amended complaint is limited to no longer than 20 pages including exhibits, if any.  It must contain a short and plain statement of the facts and claim(s).  It must specifically state what each defendant did that violated Plaintiff's constitutional rights;

3.  If Plaintiff fails to amend his complaint, or if Plaintiff's amended complaint fails to comply with this order, Plaintiff's case be dismissed with prejudice.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

1       Plaintiff is advised that failure to file objections within the specified time may result in

2 the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014)

3 (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

4

5 IT IS SO ORDERED.

6   Dated:   **May 7, 2020**           /s/ *Erica P. Grosjean*

7                                   UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28